## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | |
|---|---|
| ROLANDO PEREZ and MIRIAM PEREZ §<br>Plaintiffs, §<br>§<br>§<br>v. §<br>§<br>DOCTORS HOSPITAL AT §<br>RENAISSANCE, LTD §<br>Defendant. | Civil Action No. |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES, Plaintiffs Rolando Perez and Miriam Perez complaining of Defendant Doctors Hospital at Renaissance, Ltd. (hereinafter "DHR" or "Defendant") and will respectfully show this Court as follows:

## STATEMENT OF CLAIM

1. Plaintiffs, Rolando Perez and Miriam Perez bring their causes of action against Defendant Doctors Hospital at Renaissance, Ltd. Mr. and Mrs. Perez respectfully show that Defendant failed to accommodate their disabilities in violation of state and federal law and are liable under the ADA, 42 U.S.C. §12181, *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. §794, *et seq*., and Chapter 121. Tex. Hum. Res. Code §121.001, *et seq*.

2. Rolando Perez being very hard of hearing, and Miriam Perez being completely and profoundly deaf are both individuals with a disability as defined by federal and Texas state law.

3. Plaintiffs seek declaratory and injunctive relief, actual and statutory damages, attorneys' fees, and costs against Defendant for violations of Title III of the ADA, Section 504 of the Rehabilitation Act, and Chapter 121 of the Texas Human Resource Code.

## JURISDICTION

4. This action is brought pursuant to Title III of the ADA, Section 504 of the Rehabilitation Act, and Chapter 121. This court has jurisdiction pursuant to 28 U.S.C. §1331 and §2201, and the aforementioned federal statutory provisions. Mr. and Ms. Perez request that the court exercise supplemental jurisdiction pursuant to 28 U.S.C. §137(a) to consider their state claims. The subject matter in controversy is within the jurisdictional limits of this Court.

5. This Court has personal jurisdiction over the Defendant since it maintains its business and office in Hidalgo County, Texas.

## VENUE

6. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the event or missions giving rise to this claim occurred in Hidalgo County, Texas.

## PARTIES

7. Plaintiff, Rolando Perez is a resident of Hidalgo County. Mr. Perez is a "qualified individual with a disability" within the meaning of Title II of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. §12131; has a "disability" as defined under 42 U.S.C. §12181; and is a "person with a disability" within the meaning of Chapter 121. Tex.Hum.Res.Code §121.002(4).

8. Plaintiff, Miriam Perez is a resident of Hidalgo County. Ms. Perez is a "qualified individual with a disability" within the meaning of Title II of the ADA, 42 U.S.C. §12131; has a "disability" as defined under 42 U.S.C. §12102; and is a "person with a disability" within the meaning of Chapter 121. Tex.Hum.Res.Code §121.002(4).

9. Defendant, Doctors Hospital at Renaissance, Ltd. (DHR) is a Texas domestic limited partnership with its principal place of business in Edinburg, Texas. DHR is a place of public

2

accommodation within the meaning of Title III of the ADA. 42 U.S.C. §12181(7). Defendant is also a recipient of federal monies, and subject to Section 504. 29 U.S.C. §794. Defendant can be served with process by serving its registered agent, James Darling, at 5501 South McColl, Edinburg, Texas 78539.

## FACTS

10.     Mr. Perez is extremely hard of hearing and has been his entire life. Mr. Perez's primary language is American Sign Language ("ASL") and English is his second language. Mr. Perez's proficiency in written English is very limited. He especially cannot effectively communicate medical terminology or concepts through writing. He needs certain accommodations to allow him to access public services, which include a sign language interpreter for effective communication.

11.     Mr. Perez is married to Miriam Perez. She also needs certain accommodations to allow her to access public services, which include a sign language interpreter for effective communication. Ms. Perez is completely and profoundly deaf and has been her entire life. Ms. Perez communicates with others by ASL and her ability to write in English is extremely limited. Ms. Perez cannot communicate effectively through writing.

12.     Mr. Perez and Ms. Perez have two daughters. K.P. was born on March 12, 2009, and M.P. was born on August 24, 2010.

13.     On or about January 16, 2011, Ms. Perez realized that something was wrong with M.P.'s eyes. Mr. and Ms. Perez rushed M.P., just four months old, to the emergency room at the Defendant's facility, located at 5501 South McColl Road Edinburg, TX 78504.

14.     On or about January 17, 2011, M.P. was diagnosed with a brain tumor. M.P. spent a total of four days at the Defendant's facility. Mr. and Ms. Perez were briefly provided an

interpreter on one of those four days. For the remaining three days, Plaintiffs were not provided an interpreter and unable to effectively communicate with the doctors and medical personnel about their daughter's serious illness.

15. On January 20, 2011, Mr. and Ms. Perez took their daughter to Houston for further medical evaluations. Upon returning from Houston, they took M.P. back to the Defendant's facility where they were assigned to a social worker, Aurelio Martinez.

16. Due to M.P.'s illness, she is required to undergo chemotherapy treatments once every week. Her treatments are divided between two medical centers, The Vannie E. Cook Jr. Cancer Center, and the Defendant's facility, DHR. M.P. receives chemotherapy from The Vannie E. Cook Jr. Cancer Center, three times a month and another stronger chemotherapy treatment at the Defendant's facility once a month.

17. The number of days and nights that she spends at the Defendant's facility is dependent on her reaction to the chemotherapy treatment. During some visits, M.P. and her parents stayed at the Defendant's facility for as long as four days.

18. Although Mr. Martinez was assigned their case, Mr. and Ms. Perez have not seen or personally spoken to Mr. Martinez since the day he was assigned. Mr. and Ms. Perez had no other options but to try to communicate with Mr. Martinez through a third-party. On several occasions, Mr. and Ms. Perez made their requests for an interpreter to a nurse or doctor. The nurse or doctor would contact Mr. Martinez by phone to get approval for an interpreter. Mr. and Ms. Perez were constantly denied an interpreter by Mr. Martinez.

19. M.P. has received chemotherapy at the Defendant's facility for the last eighteen months. For seventeen of those eighteen months, Mr. and Ms. Perez have consistently been refused and denied an interpreter.

20. Mr. and Ms. Perez are unable to effectively communicate with doctors and medical personnel about their daughter's health and cancer treatment.

21. M.P. has often received chemotherapy at the Defendant's facility without any clear explanation to her parents, Mr. and Ms. Perez. After chemotherapy M.P. often suffers from side effects, such as vomiting and fever. Mr. and Ms. Perez have difficulty understanding the treatment that M.P. undergoes on a monthly basis at the Defendant's facility because they are without an interpreter and so unable to effectively communicate with the doctors or staff. M.P. is only an infant, and it is frightening for Mr. and Ms. Perez to see her undergo such procedures without any sort of explanation and/or description from the medical staff. All the doctors simply do is show them the thumbs up sign and then send them home.

22. In one instance, Mr. and Ms. Perez were provided an interpreter, Ms. Jennifer Gracia. Unfortunately Ms. Gracia was only present shortly. A nurse came into the room and told Ms. Gracia to leave. The nurse notified Ms. Gracia, Mr. Perez, and Ms. Perez that Mr. Martinez ordered for the interpreter to leave. M.P.'s doctor came to speak to Mr. and Ms. Perez shortly after Ms. Gracia's departure. Mr. and Ms. Perez were again unable to effectively communicate to the doctor about M.P.'s treatment and illness.

23. Mr. Perez works part time to help support his family. Therefore, often Ms. Perez went alone to M.P.'s treatments. Since no interpreter was provided during these visits, Ms. Perez had almost no means of communication with the hospital staff. Ms. Perez was unable to understand the doctors and staff when she attended M.P.'s chemotherapy treatments on her own. Mr. Perez often had to take time off of work to be at the hospital with his wife and daughter to try to help communicate. Mr. Perez lost income that he uses to support his family.

24. During M.P.'s last treatment at Defendant's facility in July, Mr. and Ms. Perez received a new social worker that has complied with their request for an interpreter.

25. M.P. is scheduled to go back to DHR for magnetic resonance imaging (MRI) of her cancer on October 15, 2012 and January 2013. She also must go to DHR is she has any complications and/or emergencies from her treatment.

26. In the eighteen months before July 2012, Mr. and Ms. Perez have requested for an interpreter (or some effective means of communication) on more than twenty-six occasions to no avail. Defendants are likely to continue their discriminatory practice against Mr. and Ms. Perez and others with similar disabilities.

27. Defendant was aware of Mr. and Ms. Perez's needs for interpreters, yet Mr. Martinez and other of Defendant's staff repeatedly chose to ignore Mr. and Ms. Perez's requests and did not provide an interpreter for over a year.

## CAUSES OF ACTION

### I. Violations of Title III of the ADA

28. In passing the ADA, Congress identified some 43,000,000 Americans, including children, as having one or more disabilities and found that discrimination against individuals with disabilities continues to be a serious and pervasive social problem. 42 U.S.C. §12101(a)(1)-(2).

29. Congress found that, historically, society tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be endemic. 42 U.S.C. §12101(a)(2).

6

30. Congress also found that discrimination against individuals with disabilities persists in such critical areas as housing, institutionalization, and access to public services. 42 U.S.C. §12101(a)(3).

31. Among its stated purposes, the ADA has a clear and comprehensive national mandate to eliminate discrimination against individuals with disabilities and to establish clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities. 42 U.S.C. § 12101(a)(1)-(2).

32. Under Title III of the ADA, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.

33. Defendant has discriminated against Mr. and Ms. Perez due to their disabilities, and continues to do so, by depriving them, and all those similarly situated, of the full and equal enjoyment of the facilities, privileges, advantages, or accommodations of medical services, thereby violating 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201.

34. Moreover, Defendants' conduct has denied Mr. and Ms. Perez on the basis of their disabilities the opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A) and 28 C.F.R. § 36.202.

35. Defendant has violated and continues to violate its duty to make reasonable accommodations in business policies, practices, and procedures so that Mr. and Ms. Perez and others similarly situated, are not discriminated against.

*II. Violation of Section 504 of the Rehabilitation Act of 1973*

36. Section 504 of the Rehabilitation Act requires that entities, receiving federal monies reasonably accommodate persons with disabilities in their facilities, program, activities, and services, and reasonably modify such facilities, services and programs to accomplish this purpose. 29 U.S.C. §794(b)(2)(A). Defendant, DHR is a recipient of federal monies, and therefore subject to the requirements of Section 504.

37. Section 504 prevents discrimination against people with disabilities by entities that receive federal grants and programs. As persons with a physical disability, Mr. and Ms. Perez are individuals with a disability as defined by Section 504. Section 504 defines disability by referring to the definition under the ADA. 29 U.S.C. §§705(9)(B), 705(20)(B).

38. Defendant did not reasonably accommodate Mr. and Ms. Perez when it repeatedly denied them an interpreter during M.P.'s chemotherapy sessions and hospitalizations.

*III. Violations of Chapter 121*

39. Chapter 121 established that it is "the policy of the state to encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to achieve maximum personal independence . . . and to otherwise fully enjoy and use all public facilities available within the state." Tex. Hum. Res. Code. § 121.001.

40. By discouraging and denying admittance to its public facility to Mr. Perez and Ms. Perez because of their disability, Defendant violated Texas Human Resource Code sections 121.001(c), 121.001(e), and 121.003(d). By failing to make reasonable accommodations in their policies, practices, and procedures with regard to Plaintiff's disability, Defendant violated Texas Human Resource Code section 121.001(d)(2).

ACTUAL DAMAGES

41. Defendant intentionally discriminated against Mr. and Ms. Perez by failing to accommodate their hearing disabilities. As a direct and proximate result of Defendant's conduct, Mr. and Ms. Perez lost some of Mr. Perez's pay because he was forced to be present during M.P.'s treatments to try to help Ms. Perez communicate with hospital staff. Also, as a direct and proximate result of Defendant's conduct, Mr. and Ms. Perez suffered mental anguish and emotional distress as a result of not being able to communicate with hospital staff about their young daughter's health care and treatment.

STATUTORY PENALTY

42. Chapter 121 provides for a penalty of **at least** $100 to an aggrieved party for each violation of the law, for which Defendant is liable to Mr. and Ms. Perez as a result of the violations herein. Tex.Hum.Res. Code §121.004(b). There is no maximum penalty. Because Defendant repeatedly refused the request for an interpreter for a baby girls' critical medical condition, the child and parents suffered intense distress and the parents could not show the care, comfort, and support that they would show in a parent-child relationship in such a situation. Therefore, to accomplish the statute's purpose of correcting discriminatory behavior and compensating for injuries, Plaintiffs suggest that the Court should award an amount per incident as damages in whatever amount the Court feels proper to accomplish what Chapter 121 intends to accomplish.

PERMANENT INJUNCTIVE RELIEF

43. Because Mr. Rolando Perez, Ms. Miriam Perez and other similarly situated disabled individuals will continue to experience unlawful discrimination due to Defendant's failure and refusal to comply with state and federal law, permanent injunctive relief is necessary

to order Defendant to accommodate Plaintiffs and others similarly situated so they can fully use and enjoy Defendant's services. 42 U.S.C. §12188(a)(2).

## DECLARATORY JUDGMENT

44.     Mr. Perez and Ms. Perez are entitled to a declaratory judgment concerning Defendant's violations of state and federal law, specifying his rights as a person with a disability regarding Defendant's public accommodation, and the services available to the public there. 42 U.S.C. §12188.

## ATTORNEYS' FEES AND COSTS

45.     Mr. Perez and Ms. Perez are entitled to reasonable attorneys' fees, litigation costs, and court costs, as allowed by the ADA and Section 504. 42 U.S.C. § 12188(a)(1).

## PRAYER FOR RELIEF

Plaintiffs, Rolando Perez and Miriam Perez respectfully request this Court to award them the following relief:

- A. A permanent injunction, requiring Defendant, its agents, servants, employees, and all persons acting in concert with Defendants to cease all discrimination and eliminate all barriers that prevent Mr. Perez and Ms. Perez from having access to the services and accommodations offered at DHR; and enjoining Defendant from discriminating against Mr. and Ms. Perez or others similarly situated in violation of state and federal law;

- B. Mr. and Ms. Perez also request a permanent injunction, requiring Defendant to comply with the ADA, Section 504, and Chapter 121 in the future.

- C. A declaratory judgment that Defendants' practices and procedures in the past prevented and continue to prevent Mr. and Ms. Perez and those similarly situated from fully accessing and enjoying the accommodations and services offered by Defendant, and discriminate against them, in violation of state and federal law;

- D. Actual damages within the jurisdictional limits of this Court pursuant to the violation of Section 504 of the Rehabilitation Act of 1973;

- E. Statutory damages for each violation as provided by Chapter 121;

F.  A finding that Plaintiffs are the prevailing party in this action and order Defendant liable for all of Plaintiffs' attorney's fees, costs, and expenses; and,

G.  Any other and additional relief to which Mr. and Ms. Perez may be entitled in this action.

Dated: July 26, 2012

                    Respectfully submitted,

                    /s/ Corinna Spencer-Scheurich
                    Corinna Spencer-Scheurich
                    Federal Bar No. 619913
                    Texas Bar No. 24048814
                    Elliott Thomas Tucker
                    Federal Bar No. 1074776
                    State Bar No. 24075183
                    **South Texas Civil Rights Project**
                    1017 W. Hackberry
                    Alamo, TX  78516
                    956-787-8171 [phone]
                    956-787-6348 [fax]

                    ATTORNEYS FOR PLAINTIFFS